UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                           Case No. 06-55754

GLENN RICHARD UNDERWOOD, *pro se*,           Chapter 11

           Debtor.                                 Judge Thomas J. Tucker
_____/

**OPINION AND ORDER OVERRULING THE DEBTOR'S OBJECTION
TO THE LIQUIDATING AGENT'S PROPOSED SALE OF LOTS 81 & 82,
9230 DIXIE HIGHWAY, CLARKSTON, MICHIGAN 48348**

**I. Introduction and background**

On February 2, 2016, Gene R. Kohut, the Liquidating Agent for the Bankruptcy Estate of Glenn R. Underwood ("Liquidating Agent"), filed and served a 15-day notice of his intention to sell "Lots 81 & 82, 9230 Dixie Highway, Clarkston, Michigan 48348 [(the "Property")] for the sum of $65,000.00 to Angona Construction Company, a Michigan corporation . . . ." (Docket # 224, the "Sale Notice.") On February 16, 2016, the Debtor, Glenn Underwood, timely filed an objection to the Liquidating Agent's intended sale of the Property. (Docket # 225, the "Sale Objection").

On February 29, 2016, the Court entered an order overruling all of the arguments in the Sale Objection, except the Debtor's argument that the proposed sale price for the Property is too low. As the Court stated in its February 29, 2016 Order:

> One of the arguments in the Debtor's Sale Objection is that the sale price for the Property is too low. The Debtor alleges that "the offered price . . . does not represent fair market value; particularly for an office building frontage on a five lane highway just one mile North of 1-75." (Docket # 225 at ¶ 4.) The Court concludes that this is a ground on which the Debtor has a right to object, under the October 14, 2008 Order modifying the Debtor's confirmed Chapter 11 plan (Docket # 170, at p. 2). The Court further concludes that a hearing is required, regarding this argument (and only this argument) by the Debtor.

(February 29, 2016 Order (Docket # 227) at 1.) The Court referred to this unresolved argument by the Debtor as the "sale price argument." (*Id.* at 2). The Court scheduled a hearing on the Debtor's sale price argument.

The Court held the hearing on March 16, 2016. Appearing at the hearing were the

attorney for the Liquidating Agent, the Debtor Glenn Underwood, and his wife, all of whom spoke at the hearing.

After the hearing, and for the reasons stated by the Court on the record during the hearing, the Court entered an order on March 16, 2016 (Docket # 232, the "March 16 Order"). The March 16 Order ordered the Liquidating Agent and the Debtor each to file a brief and "any documentary evidence they wish the Court to consider," regarding what the March 16 Order defined as the "Remaining Issue." The Liquidating Agent and the Debtor each timely filed such papers (Docket ## 238, 239), and the Court has carefully reviewed them.

**II. Discussion**

As stated in the March 16 Order, the "Remaining Issue" to be resolved, regarding the Debtor's objection to the Liquidating Agent's proposed sale, is this:

> The sole remaining issue to be decided by this Court (the "Remaining Issue"), with respect to the Debtor's objection to the Liquidating Agent's proposed sale of the Property, and the Debtor's sale price argument, is this: whether the Liquidating Agent's business judgment that the proposed sale price for the Property is a fair price is a "reasonable business judgment" within the meaning of the October 14, 2008 Order modifying the Debtor's confirmed Chapter 11 plan (Docket # 170 at p. 2).[1]

For the following reasons, the Court finds and concludes that a further hearing is not necessary, and that the Liquidating Agent's business judgment — that the proposed sale price for the Property is a fair price — is a "reasonable business judgment," within the meaning of the October 14, 2008 Order modifying the Debtor's confirmed Chapter 11 plan. Accordingly, the Court will overrule the Debtor's objection to the Liquidating Agent's proposed sale of the Property.

First, the Court notes that a great deal of the Debtor's April 20, 2016 brief and related exhibits contain arguments and assertions that are not relevant to the Remaining Issue (the "Other Arguments"). To the extent such Other Arguments are intended to be objections to the Liquidating Agent's proposed sale of the Property, they are without merit and must be rejected. What the Court stated in its February 29, 2016 Order applies to such Other Arguments as well, namely:

> All of the other arguments made by the Debtor in the Sale Objection will be overruled, because they are without merit, and

---

[1] The reference here is to the language in the October 14, 2008 Order giving the Liquidating Agent the power to "sell the Real Property in his reasonable business judgment . . . ."

2

are not a relevant ground on which the Debtor may object to the intended sale under the terms of the October 14, 2008 Order. And most of these arguments are simply a repetition of arguments the Debtor has previously made and this Court has rejected.

(Order, Docket # 227, at 1)(footnote omitted).

Second, to the extent the Debtor's April 20, 2016 brief argues that the undersigned judge should recuse himself, and requests such recusal, the Court rejects those arguments and will deny that request, once again, for the same reasons stated in the Court's March 15, 2016 Opinion and Order Denying Debtor's March 15, 2016 Motion for Recusal (Docket # 231), which the Court incorporates by reference into this Opinion and Order.[2]

Third, the Court finds in favor of the Liquidating Agent with respect to the Remaining Issue. That is, the Court finds and concludes that the Liquidating Agent's business judgment — that the proposed $65,000 sale price for the Property is a fair price — is a "reasonable business judgment," within the meaning of the October 14, 2008 Order modifying the Debtor's confirmed Chapter 11 plan.

This conclusion is supported and amply demonstrated by the Liquidating Agent's March 30, 2016 brief and attached exhibits (Docket # 238), including the Declaration of the Liquidating Agent and the Declaration of his real estate broker, Edward T. Harris (Docket # 238, Exs. 1 and 3).

The Court has carefully reviewed the written appraisal done by Garrett Steele, of Horizon Appraisal Co., which is attached to the Debtor's April 20, 2016 brief (the "Horizon Appraisal") (Docket # 239, Exs. 1-4). That appraisal opines that the value of the Property is $123,000 as of April 6, 2016. The Court finds and concludes, however, that this appraisal does *not* demonstrate, or tend to demonstrate, that the Liquidating Agent's business judgment, that the $65,000 proposed sale price is a fair price, is an *unreasonable* business judgment. This is so for the following reasons.

1. Unlike the Liquidating Agent's real estate broker, the Debtor's appraiser, Mr. Steele, did not

---

[2] In the Debtor's April 20, 2016 brief (Docket # 239 at 8), the Debtor alleges that the undersigned judge stated to the Debtor, at the conclusion of the March 16, 2016 hearing, "after the court recording was turned off," the following: "And it (the property) will be sold." That is simply not true. The undersigned judge made no such statement, or anything like it. There is no evidence of such a statement in either the audio recording of the March 16, 2015 hearing (Docket # 234) or in the transcript of that hearing (Docket # 236). And the undersigned judge made no such statement "after the recording was turned off." The undersigned judge made no statements to any of the parties "after the recording was turned off," and would not do so, especially in this case, where the Debtor has repeatedly (and frivolously) accused the undersigned judge of being biased against him.

personally inspect or view the interior of the building on the Property, but instead merely attached some photographs of the interior, which he says were taken by the Debtor. (Horizon Appraisal at pp. 5, 6, 24, 44). Mr. Steele states that he personally inspected "only an exterior street view" of the property. (*Id.* at p. 44). The Liquidating Agent's real estate broker, by contrast, says in his Declaration that "[t]he interior of the building is in such a condition as to require a complete overhaul to comply with current township standards." (Harris Decl., Docket # 238, Ex. 3 at ¶ 5).

2. Mr. Steele further states that "**[t]he appraiser has not walked the subject property with the due diligence expected of a professional real estate appraiser,** . . .." (Horizon Appraisal at p. 23, box next to the label "Hazardous Conditions")(bold in original).

3. Of the three basic approaches to valuation described in Mr. Steele's appraisal, *i.e.*, the "Cost Approach," the "Income Approach," and the "Sales Comparison (Market) Approach," (Horizon Appraisal at p. 28), Mr. Steele did not use the Cost Approach at all (*see id.* at p. 43 ("N/A"), and relied little on the Sales Comparison Approach. Instead, he gave "most weight . . . to the [I]ncome [A]pproach." (*Id.* at p. 30). But Mr. Steele's calculation of a value of $124,000 under the Income Approach (*see id.* at p. 32), is highly speculative and unreliable, because:

> (a) the Income Approach value calculation is based on Mr. Steele's stated assumptions about how much rent per month could be obtained by leasing the property ("market rent"), and how much the monthly expenses would be if the property were leased out, and how much the resulting net operating income per month would be. But all of *these* numbers are highly speculative and unreliable, because:
>
>> i. The property is vacant, so there are no actual tenants and no contractual rental income at present (*id.* at p. 29);
>>
>> ii. It is undisputed that the property has been vacant and has not been rented to any tenant for many years;
>>
>> iii. As a result, for this Property there is no actual history of rental value and associated expenses to back up Mr. Steele's assumptions;
>>
>> iv. Mr. Steele states that "[t]here is some risk involved with the subject property, the building is currently not rented and **may take some period of time to rent**." (*Id.* at p. 31)(bold added);
>>
>> v. Mr. Steele does not adequately explain why the "estimated current market average rent" of $1,800 per month for the building that he assumes (*id.* at p. 30) is a reliable and valid assumption; nor does he provide sufficient support for that assumption;

4

4. The analysis that Mr. Steele did under the Sales Comparison Approach, from which he derived a value of $121,000, but which he indicated he gave little weight to, is also highly speculative and unreliable, because, among other reasons,

>   (a) Mr. Steele says that "the sales comparables" that he used "are so different and the property unique with its particular zoning."  (Horizon Appraisal at p. 40).

>   (b) As noted above, Mr. Steele did not inspect the interior of the building of the subject property; nor does he indicate that he viewed the interior of any of the "comparable sales" properties.

5. Mr. Steele's conclusions about the value of the property assume a long time for marketing — they "assume a marketing time of **24 months**."  (Horizon Appraisal at p. 44)(bold in original).  This is a very long time, and an unreasonably long time, in the context of the Remaining Issue now before the Court in this bankruptcy case.  The modified Chapter 11 plan provision under which the Liquidating Agent proposes to sell the Property in this case does not require, permit, or contemplate anywhere near such a long marketing time before the Property may be sold.

6. Mr. Steele states, in listing his appraisal's "Underlying Assumptions and Limiting Conditions," that "[t]he estimated market value . . . is highly related to exposure, time, promotional effort, terms, motivation, and conditions surrounding the offering."  (*Id.* at p. 48).

It is clear that the market value of the Property at issue is the amount that it can be sold for to an actual buyer, after a reasonable time and reasonable efforts to market the property.  The best, and by far most reliable, indicator of the market value in this case is the $65,000 sale price that the actual buyer has agreed to with the Liquidating Agent, after the Liquidating Agent and his real estate broker conducted the marketing efforts described in their Declarations, which the Court finds were reasonable and adequate under the circumstances.

For these reasons, the Court finds and concludes that the Liquidating Agent's business judgment — that the proposed $65,000 sale price for the Property is a fair price — is a "reasonable business judgment" within the meaning of the October 14, 2008 Order modifying the Debtor's confirmed Chapter 11 plan.  The Debtor's objection to the contrary must be overruled.

**III. Conclusion**

For the reasons stated above, and for the reasons stated in the Court's Order filed on February 29, 2016 (Docket # 227), and in the Court's Opinion and Order filed on March 15, 2016 (Docket # 231),

   IT IS ORDERED that:

1. The Debtor's renewed request that the undersigned judge recuse himself, contained in the

Debtor's brief filed April 20, 2016 (Docket # 239), is denied.

2. The Debtor's Sale Objection is overruled, with respect to the Remaining Issue, and in all other respects.

3. The Liquidating Agent may close the proposed sale described in the Sale Notice.

4. This Order is effective immediately, and is not subject to a 14-day stay under Fed. R. Bankr. P. 6004(h).

**Signed on May 5, 2016**                               /s/ Thomas J. Tucker
                                                       **Thomas J. Tucker**
                                                       **United States Bankruptcy Judge**